CLARA M. VAUGHAN, Respondent, v. SPRING-FIELD TRACTION COMPANY, Appellant.

St. Louis Court of Appeals, argued and submitted April 28, 1909, opinion filed June 22, 1909.

1. CARRIERS OF PASSENGERS: Negligence: Contributory Negligence: Prima Facie Case.  In an action against a street railway company, by a passenger for damages on account of injuries received while the plaintiff was alighting from one of defendant's cars, caused by the sudden starting of the car before she had time to alight, the evidence is examined and held sufficient to make out a *prima facie* case for the jury.

2. ———: ———: ———: Instructions: Ground Covered.  In such case proper instructions asked by the defendant, and refused by the court, were covered by instructions given so that such refusal was not error.

Appeal from the Greene Circuit Court.—*Hon. Jas. T. Neville*, Judge.

AFFIRMED.

*Delaney & Delaney* for appellant.

On the evidence adduced by plaintiff and on the whole evidence a verdict should have been directed for defendant.    A.  The pleadings tender issues different from the issues raised by the evidence adduced on behalf of plaintiff.    B.  The evidence of physical conditions shows that it was impossible for the alleged accident to have occurred as detailed by plaintiff and her

witnesses.      State v. Vaughn, 200 Mo. 22; Phippen v. Railroad, 196 Mo. 343; Yall v. Gillham, 187 Mo. 393. The evidence, taken as a whole, conclusively shows that the accident occurred not at a regular stopping place or at a place where a stop was made in obedience to a signal, but occurred either when a stop was made for the switch or for the main tracks at Mill street.      In either of the two latter conditions, it is necessary, before liability can attach, that the plaintiff show that defendant's servants had knowledge of her intention to alight at such point or knew that she was in the act of alighting.      McDonald v. Cable Co., 32 Mo. App. 70; Cramer v. Traction Co., 112 Mo. App. 350; Parks v. Transit Co., 119 Mo. App. 445; Cobb v. Railroad, 149 Mo. 135.

*G. A. Watson* and *Hamlin & Seawell* for respondent.

Where there is any substantial evidence to support a verdict, this court will not set it aside.      Grace v. Railroad, 156 Mo. 295; James v. Insurance Co., 148 Mo. 15; Fillingham v. Transit Co., 102 Mo. App. 582; Weber v. Railroad, 100 Mo. 194.

STATEMENT.—Action for damages for personal injuries alleged to have been sustained by plaintiff through the negligence of defendant in operating a street car in the city of Springfield.      The cause of action stated in the petition on which the case was tried, after various amendments of the original petition, rests on allegations to the effect that plaintiff, being a passenger on defendant's car, gave signal of her desire to alight at the corner of Main street and Phelps avenue; that in obedience to the signal, the car stopped at Phelps avenue and while plaintiff was in the act of alighting, exercising due care in so doing, the car started with such a jerk as to throw her to the ground, inflicting the injuries of which she complains, which are claimed to be permanent, in the original petition, al-

leged to have been that her stomach, bowels and hip on the left side were injured, and, as the petition was amended, that her shoulder and breast on the right side were injured and her menstrual period had become irregular. . Damages are placed at $4,500.

The answer, after admitting the incorporation of defendant, is a general denial of all other allegations in the petition.

Practically as set out by defendant's counsel in their statement of the case, the evidence of plaintiff disclosed that on April 1, 1907, about 8 o'clock p. m., she, in company with her brother, a lad of seventeen years of age, and Mr. Farmer, a friend, boarded the car on Commercial street for the 'Frisco depot on Mill street, in Springfield. The car was south bound on Main street, and the single tracks of the defendant on Main street are intersected east and west by the 'Frisco system, at Phelps avenue by one track and at Mill street by three tracks, including the main line of the 'Frisco system, and also by a switch track. Phelps avenue runs east and west and is one block north of Mill street. At the intersection of Phelps avenue and Main street is the powerhouse of the Electric Company. At a point eleven feet south of the powerhouse is the north rail of the switch of the 'Frisco railway, which crosses Main street at a slight variance from a right angle, carrying the track beyond and behind the powerhouse. Under the requirements of the ordinances of the city of Springfield and according to the custom of the defendant, its cars stop for these crossings until flagged. There was a tower at the powerhouse or near it which seems to have been lighted up on the night in question and plaintiff and her party desired to view this tower. Plaintiff claims that when the car was near Phelps avenue, she rang the bell, signalling her desire to alight at that point. Plaintiff testified to the fact of ringing the bell north of Phelps avenue and is corroborated in this by the testimony of Mr. Farmer and of her brother. Against

that is the testimony of the motorman and conductor and of two outside witnesses, passengers on the car, these testifying that they did not hear the bell, but admitting that it was possible for the bell to have been sounded and to have escaped their attention.    The car stopped on the north side of Phelps avenue to enable the conductor to flag the railroad crossing, and the conductor went forward to the track, gave the usual signal that it was clear, and the car started across Phelps avenue; and it is claimed by counsel for defendant that the evidence shows conclusively that plaintiff did not then attempt to alight.    The testimony of plaintiff herself, as set out in the abstract, was to the effect that after the car crossed the 'Frisco tracks on Phelps avenue in obedience to her signal, it stopped again on the south side of Phelps avenue to let her and her party off to view the tower.    Her testimony was to the effect that it was at the south crossing of Phelps avenue that the car stopped and where she was hurt in alighting.    The testimony on the part of defendant's witnesses is flatly against this, but plaintiff was corroborated in her testimony, as to the car making two stops after crossing the track, by her own witnesses.    It must be admitted that the witnesses for plaintiff, on cross-examination, fell into some confusion and that there are contradictions between their testimony given in direct examination and the testimony given by plaintiff herself.    The testimony of plaintiff and her witnesses was to the effect that the conductor of the car was on the front-end step of the car as they were crossing the Phelps avenue track, and that as plaintiff and her party were getting up and going out of the car into the vestibule, that the conductor got on the front end of the car as the car was crossing the track and was on the front end of the car when the accident occurred.    Possibly the most satisfactory way of presenting the facts of the accident, as claimed by plaintiff, is to give her own version.    On direct examination, it is to the effect that she with her

brother and Mr. Farmer, got on the car and were going to the 'Frisco depot; that before they came to Phelps avenue, north of the tracks on Phelps avenue, she rang the bell; wanted to see the tower at the powerhouse on Phelps avenue; the conductor got off the car and went across to flag the 'Frisco railroad crossing on Phelps avenue and after the car had crossed the tracks it was stopped at Phelps avenue on the south side of the tracks, and when the car was stopped plaintiff and her party started to get up and go off the car; there were two young ladies on the car ahead of plaintiff, who got up and went out at the front end of the car as plaintiff and her party turned to get out at the back, and just as plaintiff stepped with her right foot out on the platform, out of the car, the car started, and as she stepped with her right foot out on the platform, she reached out, caught hold of the side of the door facing and as she caught hold of the door, the car started and threw her face front out into the street; it seemed to her that the car started with a chug, but she could not tell just how the starting was, only that they just seemed to turn the power on and started the car which started with a chug; at the time of the accident Mr. Farmer was on the back platform facing plaintiff, and her brother was in the car behind her; doesn't know what happened to her after she was thrown off until she came to herself and found Mr. Farmer brushing the dust off her clothing; the fall affected her, she said, in the manner stated in the petition as amended; prior to that she had been in good health, had weighed 159½ pounds the morning before she was hurt and at the time of the trial, which was on the 28th of October, 1907, she testified that she weighed 131 or 132 pounds. The cross-examination cannot be said to have materially changed the testimony which she gave in direct examination, and in redirect examination she testified that while she saw the motorman on the front end of the car, and though she saw that the conductor had stepped up on the step of the car, she was

not sure about this latter matter.     She further stated
that as she got up out of her seat, the motorman closed
the door between her after two young women had
stepped out; that the two young women stepped
out at the front end just as she turned to walk out
of the car and the motorman pushed the door to and
pulled the curtain down on the front end of the
car, the curtain that hangs on the door and over the
glass of the door, the curtain covering the glass, and it
was this curtain that the motorman pulled down and
in pulling it down he was looking back into the car
and at that time plaintiff was just rising up out of her
seat and going to turn around out of the car into the
aisle; was standing up at the time the motorman pulled
the curtain down; had just happened to notice that,
as she turned around out of her seat to walk out of the
car, and as she got up out of her seat, she walked
straight back out of the car; had hold of the door frame
with her left hand when the motion came which threw
her; had hold of the door frame between the car proper
and the vestibule, holding on as she was in the act of
passing out of the car.     She was corroborated in the
main in her statement by her brother and Mr. Farmer,
and was flatly contradicted on almost every point of
her testimony by the witnesses for the defendant.

Defendant interposed the usual demurrer to the
evidence at the close of plaintiff's case which was over-
ruled and exception saved, and at the close of the whole
case an instruction was asked to the effect that under
the law and the evidence the plaintiff could not recover.
Defendant also asked an instruction to the effect that
while this is a case in which an individual, a woman, is
plaintiff, a corporation defendant, the jury must try it
in the same way and weigh the testimony in the same
manner and be governed strictly by the law and the
evidence just as if it were a case between two indi-
viduals.     Defendant asked several other instructions,
which were refused and exception duly saved.     Among

Vaughan v. Traction Co.

the instructions is this, the refusal of which is dwelt on as error:

"Although you may find and believe from the evidence that the plaintiff on the approach to Phelps avenue, rang the bell, and although you may believe from the evidence that the car after stopping for the railroad crossing and after crossing such crossing came to another stop on the south side of Phelps avenue, in answer or apparently in answer to such signal, and although you believe that after coming to such second stop it started forward suddenly, yet the plaintiff cannot recover unless you believe from the evidence that it was during such stop and at said place that the plaintiff attempted to alight and was thrown from the car, if you find she was thrown. If it was not at such time and place that she was injured, but if you believe in fact that the accident occurred when the car again stopped, either for the switch track or the main tracks at Mill street, then plaintiff had no right to attempt to alight at either of such places without notifying the defendant's servants of her desire or intention so to do. And if the accident occurred at either of said places, you must find for the defendant unless it is shown by a preponderance of the testimony that the plaintiff did make known her desire to get off at one of such places, or unless it is shown by a preponderance of the testimony that the defendant's servant or servants knew she was actually attempting to alight at one of such places after the car came to a stop on account of the crossing."

At the instance of the plaintiff and of its own motion, the court gave this instruction:

"If you find from the evidence that plaintiff on the first day of April, 1907, was a passenger on one of defendant's cars, and that the defendant's operatives in charge of said car knew that she desired to, and was about to leave said car just south of Phelps avenue on

Main street and stopped the car at said point to let her off, and if you further find from the evidence that while she was going out onto the platform and before she could alight from said car, the motorman started the same suddenly and threw plaintiff to the ground and injured her, then you will find the issues in favor of the plaintiff and assess her damages at such an amount as in your judgment under the evidence will reasonably pay her for the pain and suffering she has endured on account of said injury.

"If the car was stopped at a point south of the one above specified and she was in the act of leaving said car and if defendant's motorman or conductor knew of her intention and attempt to leave same while so stopped and if they, so knowing, suddenly started said car and threw her to the ground and injured her, then she is entitled to recover. If she attempted to get off the car while it was moving and was thrown to the ground thereby she cannot recover.

"It devolves upon her to prove the facts heretofore predicated as of right to recover by a preponderance or greater weight of the evidence, and unless she has so done your verdict must be for the defendant.

"If you find from the evidence that the car was standing still at a point other than one where passengers were usually unloaded, then unless the motorman or conductor actually knew that she was in the act of leaving said car, and so knowing suddenly started said car, she cannot recover.

"You are the sole judges of the credibility of the witnesses and of the weight to be given their testimony; in passing on their evidence you will consider their appearance and demeanor on the stand, their interest, bias or prejudice, if any, their relationship to the parties or the case, the reasonableness or unreasonableness of their testimony and any and all other facts and circumstances in evidence, which in your judgment would add

to or detract from their credibility or the weight of their testimony."

The jury brought in a verdict in favor of plaintiff in the sum of $275, and a motion for new trial having been filed in due time and overruled, exceptions saved, appeal prayed for and granted, and appeal bond filed, the case is here on defendant's appeal, judgment having been duly entered on the verdict in favor of plaintiff.

REYNOLDS, P. J. (after stating the facts).—It is claimed by the learned counsel for defendant, that on the evidence adduced by plaintiff and on the whole evidence, the verdict should have been directed for defendant, it being claimed that the pleadings tendered issues different from the issues raised by the evidence adduced on behalf of plaintiff, and the evidence of the physical conditions shows that it was impossible for the alleged accident to have occurred as detailed by plaintiff and her witnesses; and it was further assigned as ground for reversal that, taken as a whole, the evidence conclusively shows that the accident occurred, not at a regular stopping place or at a place where the stop was made in obedience to a signal, but occurred either when a stop was made at a switch or at the main tracks at Main street. Complaint is hence made that the instructions do not fairly and specifically present the defense interposed founded on that theory; that the duty of the defendant where a passenger attempts to alight at a regular stopping place or at a place where a stop is made in obedience to a signal, is quite distinct from the duty arising when passengers attempt to alight merely because a stop is made in obedience to a regulation prescribed by law, and that defendant was entitled to have this pointed out by a clear-cut declaration of law; that the instruction given by the court is too general and the more specific one asked by defendant should have been given and that defendant was entitled to have that given as a converse proposition

to that declared in plaintiff's instruction.   The point
is also made "that although there was an apparent con-
flict in the evidence such as would prevent the court
declaring a variance between pleading and proof, yet
the question should have been submitted to the jury;"
that plaintiff cannot declare that the car stopped at a
regular crossing in obedience to a signal and recover
on the theory or proof that it stopped not at a regular
crossing and not in obedience to a signal, but at least
one hundred and fifty feet from a crossing and at a
switch where the law compelled the car to stop and
compelled the conductor to leave the car and the care
of his passengers to go ahead and flag.   These are the
principal points argued, it being finally urged that
under all the evidence the verdict should not only have
been for defendant, but that there is no substantial
evidence to sustain the finding for plaintiff.

Counsel for defendant have cited quite a number
of cases in support of their contention, but on a review
of the testimony in the case and the instructions given
by the court, we are of the opinion that while it would
not have been improper to have given the instructions
asked for by the defendant, the court has fully and
fairly covered all the propositions involved in the case
with sufficient accuracy and with sufficient regard to
the evidence in the case to fairly and intelligently pre-
sent to the jury the issues involved.   While it would
not have been improper to have given either of the in-
structions the refusal to give which is specially com-
plained of, we do not think that the refusal to do so is
reversible error.   The propositions involved in them—
save as to the warning against prejudice against a cor-
poration defendant, are fairly covered by the instruc-
tions given.   The evidence, on nearly every material
fact was contradictory.   It was a case calling for the
decision of the jury.   They are not only the triers but
determinators of the facts.   Finding no material error
and believing from the evidence in the case that the

verdict is for the right party, and satisfied that if she is entitled to recover at all, the amount awarded plaintiff is a very modest one, entirely disposing of any idea that the jury was governed by prejudice or passion, we affirm the judgment of the circuit court. All concur.